1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOHN ELLIS (No. 59328)
Jellis@ellislegal.com
ELLIS LEGAL P.C.
200 West Madison Street, Suite 2670
Chicago, Illinois 60606
Telephone: (312) 967-7629

Attorneys for Defendants
BUMBLE INC.
BUZZ HOLDINGS L.P.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| HOLLIS HILL, individually and on behalf of all others similarly situated,<br><br>                          Plaintiff,<br><br>          v.<br><br>BUMBLE, INC. and BUZZ HOLDINGS, L.P.<br>Defendants. | Case No.   _____<br><br>**DECLARATION OF JOHN C. ELLIS IN SUPPORT OF DEFENDANTS BUMBLE INC.'S AND BUZZ HOLDINGS L.P.'S NOTICE OF REMOVAL**<br><br>[Circuit Court of Cook County Case No. 2021-CH-5970] |

I, John C. Ellis, hereby declare as follows:

1.      I am a member of the Bar of the State of Illinois and the owner of the law

firm of Ellis Legal P.C., counsel of record for Defendants Bumble Inc. and Buzz Holdings

L.P. (collectively, "Defendants") in the above-captioned action. I have personal

knowledge of the matters set forth below and, if called upon to do so, I could and would

testify competently thereto.

2.      Attached to this Declaration as **<u>Exhibit A</u>** is a true and correct copy of the

civil action filed by Plaintiff Hollis Hill, purportedly on behalf of himself and all similarly

1  situated individuals, in the Circuit Court of Cook County, Illinois, entitled *Hollis Hill v.*

2  *Bumble, Inc.*, *et al.*, Case No 2021-CH-5970.

3      3.      Attached hereto as **Exhibit B** is a true and correct copy of the Notice of

4  Removal (without exhibits) that was filed in the Circuit Court of Cook County.

5      I declare under penalty of perjury under the laws of the State of Illinois and the

6  United States that the foregoing is true and correct.

7      Executed this 29th day of December, 2021 in Chicago, Illinois.

8

9

10                     /s/ John Ellis
                     John Ellis

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

Exhibit A

Hearing Date: 3/28/2022 9:30 AM - 9:30 AM
Courtroom Number: 2305
Location: District 1 Court
    Cook County, IL

FILED
11/24/2021 10:04 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL

15739444

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

HOLLIS HILL, individually and on behalf of
all others similarly situated,

    Plaintiff,

    v.

BUMBLE, INC., BUZZ HOLDINGS L.P.,

    Defendants.

Case No.    2021CH05970

## CLASS ACTION COMPLAINT AT LAW

Plaintiff Hollis Hill brings this class action complaint against Defendants Bumble Inc. and

Buzz Holdings, L.P. ("Defendants") for violating the Illinois Biometric Information Privacy Act

("BIPA"), 740 ILCS 14/1 *et seq*. Plaintiff alleges the following upon personal knowledge as to

himself and his own acts and experiences and, as to all other matters, upon information and belief,

including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1.    Defendants own and operate Badoo, which is the most-downloaded dating app in

the world and is used by many people in Illinois—a state that, through BIPA, imposes strict

requirements on private entities' collection and use of biometric identifiers[1] and biometric

information[2] (collectively, "biometrics"). Despite these requirements, which have been on the

---

[1] A "biometric identifier" includes a retina or iris scan, fingerprint, voiceprint, or scan of hand or "face geometry." 740 ILCS 14/10.

[2] "Biometric information" is any information captured, converted, stored, or shared based on a person's biometric identifier used to identify an individual. *See id.*

1

books for over ten years, Defendants have been violating BIPA through their collection of face geometry scans done as part of a key feature of the Badoo dating app.

2.      Biometrics are particularly sensitive personal information. As the Illinois Legislature explained, "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/15(c). "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.*

3.      In 2008, based on these concerns over the security of individuals' biometrics, the Illinois Legislature enacted BIPA. Under BIPA, private entities may not obtain an individual's biometrics unless they inform that person in writing that biometric identifiers or information will be collected or stored. *See* 740 ILCS 14/15(b).

4.      As part of this notice requirement, private entities collecting biometrics must also inform those persons in writing of the specific purpose and length of time for which such biometric identifiers or biometric information are being collected, stored, and used. *See id.*

5.      And critically, BIPA requires private entities collecting biometrics to obtain a written release from those persons authorizing the collection of their biometrics.

6.      To facilitate these notice and consent requirements, BIPA also requires private entities collecting biometrics to develop a publicly available policy establishing a retention schedule and guidelines for permanently destroying biometrics collected. *See* 740 ILCS 14/15(a).

7.      Defendants violated each of these requirements.

8.      As part of Defendants' Badoo dating app, many users are required to "verify" their profile. That means the users must prove they are in fact the people in the pictures they have

2

uploaded to their profile. To that end, Defendants require users to take a picture of themselves—a "selfie"—that Defendants then compare to the users' profile pictures.

9.      Defendants conduct this review process in part by using facial recognition technology, which extracts face geometry data on the unique points and contours (i.e., biometric identifiers) of the user's face in the selfie and creates a faceprint for the user. Defendants thus collect, use, and store individuals' biometrics as part of this verification process.

10.     Despite their collection and use of biometrics, Defendants do not inform users in writing that they are collecting or storing their biometrics; do not inform users in writing of the specific purpose and length of time for which they are collecting, storing, or using the biometrics; and do not obtain a written release from users authorizing the collection of their biometrics.

11.     Nor do Defendants provide a publicly available policy establishing a retention schedule and guidelines for permanently destroying these biometrics.

12.     Plaintiff brings this action to prevent Defendants from further violating the privacy rights of Illinois residents and to recover statutory damages for Defendants' unauthorized collection, storage, and use of these individuals' biometrics in violation of BIPA.

## JURISDICTION AND VENUE

13.     Jurisdiction in this Court is proper pursuant to 735 ILCS 5/2- 209(a)(1), 5/2-209(b)(4), and 5/2-209(c) of the Illinois Code of Civil Procedure. The alleged conduct that is the subject of this action occurred within Cook County, Illinois.

14.     Venue is proper in this Court pursuant to 735 ILCS 5/2-101(2) because this is the county in which the transaction, or some part thereof, occurred.

## PARTIES

15.     Plaintiff Hollis Hill is, and has been at all relevant times, a citizen of Illinois.

16.     Defendant Bumble Inc., incorporated in Delaware on October 5, 2020, is an American social media company. Bumble Inc. maintained its principal place of business at 1105 West 41st Street, Austin, Texas 78756.

17.     Before completing its initial public offering on February 16, 2021, Bumble Inc. undertook certain reorganization transactions such that Bumble Inc. is now a holding company, and its sole material asset is a controlling equity interest in Buzz Holdings L.P. As the general partner of Buzz Holdings, Bumble Inc. now operates and controls all of the business and affairs of Buzz Holdings, has the obligation to absorb losses and receive benefits from Buzz Holdings and, through Buzz Holdings and its subsidiaries, conduct its business.

18.     Defendant Buzz Holdings is a Delaware limited partnership that operates the Badoo dating app. Buzz Holdings maintains its principal place of business at 1105 West 41st Street, Austin, Texas 78756.

## FACTUAL BACKGROUND

**I.     Illinois' Biometric Information Privacy Act**

19.     In 2008, Illinois enacted BIPA due to the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. To protect this highly sensitive personal information, BIPA imposes several requirements on companies relating to biometrics.

4

20. Under BIPA, before obtaining an individual's biometrics, a private entity must comply with the statute's notice and consent provisions. Specifically, BIPA makes it unlawful for a private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a consumer's biometric identifiers and/or biometric information, unless it first:

(1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative."

740 ILCS 14/15(b).

21. To facilitate these informed notice and consent provisions, BIPA also requires that any company "in possession of biometric identifiers or information" must publish a written policy "establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

22. To enforce BIPA's requirements, the statute includes a private right of action authorizing "[a]ny person aggrieved by a violation" to sue and recover for each violation liquated damages of $1,000 for a negligent violation, or $5,000 in the event of an intentional or reckless violation, plus attorneys' fees, costs, and appropriate injunctive relief. 740 ILCS 14/20.

23. As alleged below, Defendants violated BIPA by collecting, storing, and using individuals' biometric identifiers (specifically, facial geometry) and associated biometric information without providing notice and obtaining informed written consent. Defendants also

5

violated BIPA by failing to provide a publicly available policy on their schedule and guidelines for the retention and permanent destruction of individuals' biometrics.

## II.    The Badoo App

24.    Created in 2006, Badoo is a dating app that was launched by the Russian-British billionaire Andrey Andreev. Before Badoo, Andreev founded several other companies, including SpyLog—a web-tracking business that helped webmasters track visitors to their site and users' habits on the Internet.

25.    In its early days, Badoo operated as a free dating website that combined photo albums with instant messaging. During this time, most dating platforms required paid memberships and had limited photo or messaging support. Defendants later launched and scaled Badoo as the first modern mobile dating app, and the app was then available on both the Apple and Google mobile operating systems—iOS and Android, respectively.

26.    Badoo has grown to become the world's most-downloaded dating app. The Badoo website features a live counter displaying the number of people who have "already joined" and inviting others to "jump in." The number of people who have "already joined" Badoo is over 514 million worldwide, which includes many Illinois residents.

27.    Defendants tout the technological innovations that Badoo has brought to the online dating world over the years. For example, in 2007, Badoo introduced "Encounters," a feature that allowed users to vote yes or no on other users. In 2009, Badoo included features like virtual gifts and the ability to "rise up" in search results and to see "who likes you." In 2010, Badoo leveraged GPS technology with its new feature "People Nearby," which allowed users to see people in their surrounding area.

28.    More recently, in 2016, Defendants launched Badoo's "Profile Verification" feature—the focus of this Complaint. This feature "helps prove to other users that you're a real

6

person" and "that you're over 18 years old."[3] In essence, this feature ensures that a user is in fact the person the user claims to be in the pictures uploaded to the user's profile on the app. Defendants claim to have implemented this feature to "stamp out fake profile registrations."

29.    Profile Verification occurs in several circumstances. Today, users are required to verify their profiles when they first sign up for the app and set up their profile. The app may also ask existing users to verify their profiles because, for example, they have been reported as potentially fake. Users can also choose to verify their profiles.

30.    To verify their profiles, users must take a selfie that matches a random pose displayed by the app.



31.    Defendants then employ a process, described in more detail below, to verify that the person in the user's selfie is the same person in the user's profile pictures on the app. Once the user's profile is verified, the user receives a stamp of approval that shows the app has verified the user. If the app cannot verify a user's profile, the app may block the user's profile.

---

[3] Profile Verification, https://badoo.com/help/?section=265 (last visited November 22, 2021).

### III.    Defendants' Secretive Use of Facial Recognition Technology

32.    For Badoo's profile verification process, Defendants supposedly employ thousands of human moderators across the world to review photos in real time. But the profile verification process does not consist solely of manual human review. As Defendants vaguely explain on the Badoo website, this verification feature uses "a combination of automated and human moderation processes."[4] The automated process that Defendants use is called facial recognition technology. Using this technology, Defendants obtain face geometry scans from users by extracting face geometry data on the unique points and contours (i.e., biometric identifiers) of each face and then using that data to create a template of each face.

33.    Though not disclosed anywhere,[5] Defendants' use of facial recognition technology to obtain face geometry scans is apparent from the verification feature's ability to quickly distinguish between human and non-human faces. When a user uploads a real selfie to Badoo's profile verification feature, the app takes approximately a minute to analyze the photo and respond with an affirmation or rejection of the photo. But when a user uploads a picture of something non-human—like a cat or a glass—the photo verification feature immediately responds with a rejection message. This immediate response shows that the data is initially analyzed by an automated system that scans the photo to recognize where it includes a visible face.

---

[4] Profile Verification, https://badoo.com/help/?section=265 (last visited November 22, 2021).

[5] Although Badoo's privacy policy includes "Biometric information" in a list of data that it collects, the policy states parenthetically that this category is "not relevant here." Badoo Privacy Policy, https://badoo.com/privacy/ (last visited November 22, 2021).

 

34.     Defendants' use of facial recognition technology to obtain face geometry scans here is also apparent because they have done so openly in another context. In 2017, soon after implementing the prolife verification feature, Badoo launched a celebrity lookalike feature that allowed users to find matches who look like their favorite celebrities or a non-celebrity they fancy. As a PCMag article described this feature, "[Badoo] just launched a new feature dubbed Lookalikes, which uses facial recognition to help you find potential matches that look just like your crush."[6] While this feature did attract some users, it also met criticism from some who were concerned about Defendants' use of facial recognition and it was removed at an unknown time.

35.     This same facial recognition technology is part of Badoo's Profile Verification feature. Although this feature may also include some element of human review, it is powered in part by this facial recognition technology that collects face scans from users.

---

[6] Angela Moscaritolo, *Badoo Uses Facial Recognition to Match You with Celeb Lookalikes*, PCMag (July 11, 2017), https://www.pcmag.com/news/badoo-uses-facial-recognition-to-match-you-with-celeb-lookalikes.

36.     Yet, despite BIPA's clear edict, Defendants do not inform users in writing that they are collecting or storing their biometrics; do not inform users in writing of the specific purpose and length of time for which they are collecting, storing, or using their biometrics; and do not obtain a written release from users authorizing the collection of their biometrics.

37.     Nor do Defendants provide a publicly available policy establishing a retention schedule and guidelines for permanently destroying these biometrics.

**IV.     Plaintiff Hollis Hill's Experience**

38.     Plaintiff is a Badoo user and has, within the applicable statute of limitations, verified his profile using the app's Profile Verification feature.

39.     As part of the profile verification process, Defendants required Plaintiff to take a selfie, at which point Defendants' facial recognition software captured and collected Plaintiff's faceprint.

40.     Defendants never informed Plaintiff that his biometric identifiers or biometric information were being collected or stored.

41.     Defendants never informed Plaintiff in writing of the specific purpose and length of term for which his biometric identifiers or biometric information were being collected, stored, and used.

42.     Defendants never received a written release from Plaintiff authorizing the collection of his biometric identifiers or biometric information.

43.     Because Plaintiff was never informed of the collection of his faceprint, Plaintiff did not consent to the capture or collection of his faceprint.

44.     Defendants also do not provide a publicly available retention schedule specifying the period of time for which they will retain Plaintiff's faceprint.

45.     Plaintiff was injured as a result of Defendants' violations of his statutorily protected

right not to have his faceprint collected without consent.

## CLASS ALLEGATIONS

46.     **Class Definition:** Plaintiff brings this action pursuant to 735 ILCS 5/2-801 on

behalf of a class of similarly situated individuals, defined as follows (the "Class"):

> All individuals who, while residing in the State of Illinois, had their facial geometry
> collected, captured, received, or otherwise obtained and/or stored by Defendants.
>
> Excluded from the Class are: (i) any judge or magistrate judge presiding over this
> action and members of their staff, as well as members of their families; (ii)
> Defendants, Defendants' predecessors, parents, successors, heirs, assigns,
> subsidiaries, and any entity in which any Defendant has a controlling interest, as
> well as Defendants' current or former employees, agents, officers, and directors;
> (iii) persons who properly execute and file a timely request for exclusion from the
> class; (iv) persons whose claims in this matter have been finally adjudicated on the
> merits or otherwise released; (v) counsel for Defendants; and (vi) the legal
> representatives, successors, and assigns of any such excluded persons.

47.     **Numerosity:** Pursuant to 735 ILCS 5/2-801(1), the number of persons within the

Class is substantial, believed to amount to thousands of persons. It is, therefore, impractical to join

each member of the Class as a named Plaintiff. Further, the size and relatively modest value of the

claims of the individual members of the Class renders joinder impractical. Accordingly, utilization

of the class action mechanism is the most economically feasible means of determining and

adjudicating the merits of this litigation. Moreover, the Class is ascertainable and identifiable from

Defendants' records.

48.     **Commonality and Predominance:** Pursuant to 735 ILCS 5/2-801(2), there are

well-defined common questions of fact and law that exist as to all members of the Class and that

predominate over any questions affecting only individual members of the Class. These common

legal and factual questions, which do not vary from Class member to Class member, and which

11

may be determined without reference to the individual circumstances of any class member, include, but are not limited to, the following:

    (a) whether Defendants collected or otherwise obtained Plaintiff's and the Class's biometric identifiers or biometric information;

    (b) whether Defendant properly informed Plaintiff and the Class that it collected, used, and stored their biometric identifiers or biometric information;

    (c) Whether Defendants informed Plaintiff and the Class of the purpose for which they collected their biometric identifiers or biometric information, or the duration for which they would retain that data;

    (d) whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's and the Class's biometric identifiers or biometric information;

    (e) whether Defendants developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of their last interaction, whichever occurs first; and

    (f) whether Defendant's violations of BIPA were committed intentionally, recklessly, or negligently.

    49.    **Adequate Representation:** Pursuant to 735 ILCS 5/2-801(3), Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of such a Class. Neither Plaintiff nor his counsel has any interest adverse to, or in conflict with, the interests of the absent members of the Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims. If necessary, Plaintiff may seek leave of this Court to amend this Class Action

Complaint to include additional Class representatives to represent the Class, additional claims as may be appropriate, or to amend the Class definition to address any steps that Defendants took.

50. **Superiority:** Pursuant to 735 ILCS 5/2-801(4), a class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class-wide relief is essential to compliance with BIPA.

## CAUSES OF ACTION

### Count I
### Against All Defendants
### Violation of 740 ILCS 14/15(b) – Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information

51. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

52. BIPA requires companies to obtain informed written consent from individuals before acquiring their biometrics. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2)

informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ." 740 ILCS 14/15(b). Defendant failed to comply with these BIPA mandates.

53.     Defendant Bumble Inc. is a Delaware corporation and is thus a "private entity" under BIPA. *See* 740 ILCS 14/10.

54.     Defendant Buzz Holdings L.P. is a Delaware limited partnership and is thus a "private entity" under BIPA. *See id.*

55.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected and/or captured by Defendants, as explained in detail above. *See* 740 ILCS 14/10.

56.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See id.*

57.     Defendants never informed Plaintiff and any member of the Class in writing that their biometric identifiers and/or biometric information were being collected, captured, stored, and/or used, nor did Defendant inform Plaintiff and the Class in writing of the specific purpose(s) and length of term for which their biometric identifiers and/or biometric information were being collected, stored, used and disseminated as required by 740 ILCS 14/15(b)(1)-(2).

58.     Defendants collected, captured, used, and stored Plaintiff's and the Class's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

59.     By collecting, capturing, storing, and/or using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendants violated Plaintiff's and the

14

Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq*.

60.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendants to comply with BIPA's requirements for the collection, capture, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**Count II**
**Against All Defendants**
**Violation of 740 ILCS 14/15(a) – Failure to Institute, Maintain, and Adhere to Publicly**
**Available Retention Schedule**

61.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

62.     BIPA mandates that companies in possession of biometrics establish and maintain a satisfactory biometrics retention and deletion policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometrics (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a). Defendants failed to comply with these BIPA mandates.

63.     Defendant Bumble Inc. is a Delaware corporation and is thus a "private entity" under BIPA. *See* 740 ILCS 14/10.

64.     Defendant Buzz Holdings L.P. is a Delaware limited partnership and is thus a "private entity" under BIPA. *See id.*

15

65.     Plaintiff is an individual who had his "biometric identifiers" captured and/or collected by Defendants, as explained in detail above. *See* 740 ILCS 14/10.

66.     Defendants failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS 14/15(a).

67.     Upon information and belief, Defendants lacked retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometrics and have not and will not destroy Plaintiff's and the Class's biometrics when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

68.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendants to comply with BIPA's requirements for a publicly available retention and deletion policy; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Hollis Hill, on behalf of himself and the proposed Class, respectfully requests that this Court enter an Order:

A.  Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing his counsel as Class Counsel;

B.  Declaring that Defendants' actions, as set out above, violate BIPA, 740 ILCS 14/1, *et seq.*;

C. Awarding statutory damages of $5,000.00 for each and every intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages of $1,000.00 for each and every violation pursuant to 740 ILCS 14/20(1) if the Court finds that Defendants' violations were negligent;

D. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, among other things, an Order requiring Defendants to collect, store, and use biometric identifiers and/or biometric information in compliance with BIPA;

E. Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses;

F. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

G. Awarding such other and further relief as equity and justice may require.

Dated: November 24, 2021                                    Respectfully submitted,

                                                           s/ *Brian M. Hogan*
                                                           Brian M. Hogan
                                                           **FREED KANNER LONDON**
                                                           **& MILLEN LLC**
                                                           2201 Waukegan Road, Suite 130
                                                           Bannockburn, IL 60015
                                                           Phone: (224) 632-4500
                                                           bhogan@fklmlaw.com

                                                           Jonathan M. Jagher (*pro hac vice* to be filed)
                                                           **FREED KANNER LONDON**
                                                           **& MILLEN LLC**
                                                           923 Fayette Street
                                                           Conshohocken, PA 19428
                                                           Phone: (610) 234-6487
                                                           jjagher@fklmlaw.com

                                                           *Attorneys for Plaintiff and the Proposed*
                                                           *Class*

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

HOLLIS HILL, individually and on behalf of
all others similarly situated,

        Plaintiff,

      v.

BUMBLE, INC., BUZZ HOLDINGS L.P.,

        Defendants.

Case No.

## AFFIDAVIT

I, Brian M. Hogan, state under oath:

1.    I am an attorney associated with Freed Kanner London & Millen LLC and am responsible for filing of the Complaint at Law in this matter.

2.    The total money damages sought by plaintiff does exceed $50,000.00, exclusive of interest and costs.

Freed Kanner London & Millen LLC
By: Brian M. Hogan

Subscribed and Sworn to before me
this 22 day of November, 2021.

NOTARY PUBLIC

BRANDON BECERRA MENESES
Official Seal
Notary Public - State of Illinois
My Commission Expires Apr 24, 2024

Brian M Hogan
**FREED KANNER LONDON & MILLEN LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4521
bhogan@fklmlaw.com
Firm I.D. No. 49473

Exhibit B

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| HOLLIS HILL, individually and on behalf of similarly situated individuals, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 21-CH-05970 |
| v. | ) ) | |
| BUMBLE, INC. and BUZZ HOLDINGS, L.P. | ) ) | |
| Defendants. | ) | |

**NOTICE TO STATE COURT OF REMOVAL TO FEDERAL COURT**

Please take notice that Defendants BUMBLE, INC. AND BUZZ HOLDINGS, L.P.

("DEFENDANTS"), have, on December 29, 2021, filed a Notice of Removal with the Clerk of the

United States District for the Northern District of Illinois, to remove the above-referenced cause,

No. 21-CH-05970, from the Circuit Court of Cook County to the United States District Court for

the Northern District of Illinois.  A copy of Defendants' Notice of Removal is attached hereto

and marked as "Exhibit A."

Dated: December 29, 2021                                        Respectfully submitted,

                                                               By: /s/ John C. Ellis
                                                                   Attorney for Defendants


John C. Ellis
ELLIS LEGAL P.C.
200 W. Madison Street, Suite 2670
Chicago, Illinois 60606
(312) 976-7629
jellis@ellislegal.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on December 29, 2021 a true and correct copy of the foregoing document was served via email, upon the following:

Freed Kaneer London & Millen LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
bhogan@fklmlaw.com

/s/ John C. Ellis
Attorney for Defendants

John C. Ellis
ELLIS LEGAL P.C.
200 W. Madison Street, Suite 2670
Chicago, Illinois 60606
(312) 976-7629
jellis@ellislegal.com