UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HOLLIS HILL and KEMELLE HOWELL, individually and on behalf of all others similarly situated, <br><br>                 Plaintiffs, <br><br>     v. <br><br> BUMBLE INC., BUZZ HOLDINGS L.P., and BUMBLE TRADING LLC, <br><br>             Defendants. | Case No. 1:21-cv-06898 <br><br> Hon. Sharon Johnson Coleman <br><br> JURY TRIAL DEMANDED |

## AMENDED CLASS ACTION COMPLAINT

Plaintiffs Hollis Hill and Kemelle Howell bring this amended class action complaint and demand for jury trial against Defendants Bumble Inc., Buzz Holdings L.P., and Bumble Trading LLC ("Defendants") for violating the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.*[1] Plaintiffs allege the following upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## NATURE OF THE ACTION

1.       Defendants own and operate Badoo, which is the most-downloaded dating app in the world and is used by many people in Illinois—a state that, through BIPA, imposes strict requirements on private entities' collection and use of biometric identifiers[2] and biometric

---

[1] Plaintiffs' original Class Action Complaint was filed in the Circuit Court for Cook County, Illinois. Defendants Bumble, Inc. and Buzz Holdings, L.P., removed the action to the United States District Court for the Northern District of Illinois. *See* ECF No. 1.

[2] A "biometric identifier" includes a retina or iris scan, fingerprint, voiceprint, or scan of hand or "face geometry." 740 ILCS 14/10.

information[3] (collectively, "Biometric Data"). Despite these requirements, which have been the law in Illinois for 14 years, Defendants have been violating BIPA through their collection of face geometry scans done as part of a key feature of the Badoo dating app.

2.      Biometric Data is particularly sensitive personal information. As the Illinois Legislature explained, "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/15(c). "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.*

3.      In 2008, based on these concerns over the security of individuals' Biometric Data, the Illinois Legislature enacted BIPA. Under BIPA, private entities may not obtain an individual's Biometric Data unless they inform that person in writing that biometric identifiers or information will be collected or stored. *See* 740 ILCS 14/15(b).

4.      As part of this notice requirement, private entities collecting Biometric Data must also inform those persons in writing of the specific purpose and length of time for which such Biometric Data are being collected, stored, and used. *See id.*

5.      And critically, BIPA requires private entities collecting Biometric Data to obtain a written release from those persons authorizing the collection of their Biometric Data.

6.      To facilitate these notice and consent requirements, BIPA also requires private entities collecting Biometric Data to develop a publicly available policy establishing a retention

---

[3] "Biometric information" is any information captured, converted, stored, or shared based on a person's biometric identifier used to identify an individual. *See id.*

schedule and guidelines for permanently destroying Biometric Data collected. *See* 740 ILCS 14/15(a).

7.      Defendants violated each of these requirements.

8.      As part of Defendants' Badoo dating app, many users are required to "verify" their profile. That means the users must prove they are in fact the people in the pictures they have uploaded to their profile. To that end, Defendants require users to take a picture of themselves—a "selfie"—that Defendants then compare to the users' profile pictures.

9.      Defendants conduct this review process in part by using facial recognition technology, which extracts face geometry data on the unique points and contours (i.e., biometric identifiers) of the user's face in the selfie and creates a faceprint for the user. Defendants thus collect, use, and store individuals' Biometric Data as part of this verification process.

10.     Despite their collection and use of Biometric Data, Defendants do not inform users in writing that they are collecting or storing their Biometric Data; do not inform users in writing of the specific purpose and length of time for which they are collecting, storing, or using the Biometric Data; and do not obtain a written release from users authorizing the collection of their Biometric Data.

11.     Nor do Defendants provide a publicly available policy establishing a retention schedule and guidelines for permanently destroying this Biometric Data.

12.     Plaintiffs bring this action to prevent Defendants from further violating the privacy rights of Illinois residents and to recover statutory damages for Defendants' unauthorized collection, storage, and use of these individuals' Biometric Data in violation of BIPA.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1332(d) and 1367 because: (i) this is a class action in which the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs; (ii) there are 100 or more class members; and (iii) some members of the class are citizens of states different from some Defendants.

14. This Court has personal jurisdiction over Defendants because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from Illinois and specifically this District. Defendants collected Biometric Data directly in Illinois from Plaintiffs and Illinois-based users and exposed residents of Illinois to ongoing privacy risks within Illinois and this District based on the collection, capture, obtainment, disclosure, redisclosure and dissemination of their Biometric Data.

15. As part of Defendants' Badoo dating app, Illinois users are required to "verify" their profile. Furthermore, through the Badoo dating app, Defendants actively collect information harvested from the Illinois-based devices of Illinois residents.

16. Dating apps like Badoo earn money through ad views, clicks, paid subscriptions, memberships, and in-app purchases. Badoo also monetizes via a freemium model whereby use of the service is free and a subset of the users pay for subscriptions or in-app purchases to access premium features. Upon information and belief, Defendants generate revenue from thousands of paying users who reside in Illinois, including this District.

17. By deriving revenue from Illinois residents, this constitutes purposeful activity directed at devices and individuals in Illinois and this District.

18. Defendants have expressly targeted the Badoo dating app within Illinois and this District in order to gain brand awareness and encourage Illinois residents to use the Badoo dating app.

19.     In 2012, Defendants were a festival partner and sponsor at the Pitchfork Music Festival in Chicago's Union Park. Badoo created a website specifically dedicated to market and promote its dating app at the Chicago-based festival.[4]



20.     At Pitchfork, Defendants' employees advertised the Badoo dating app out of a tent station with signs imploring attendees they can "Meet New People" if they "Download The Badoo App On Your Mobile Phone Or Scan The QR Code." Pitchfork attendees that downloaded the Badoo dating app received free sunglasses and were entered to win tickets to the V.I.P. area.[5]



---

[4] *See* https://m.facebook.com/story.php?story_fbid=336158256469345&id=111798952177249&p=0 (last accessed Apr. 4, 2022).

[5] *See Pitchfork Music Festival Ideas: Sponsors Read Auras, Built Walk-In Beer Cooler in Chicago*, BizBash,          available          at:          https://www.bizbash.com/production-strategy/strategy/media-gallery/13479186/pitchfork-music-festival-ideas-sponsors-read-auras-built-walkin-beer-cooler-in-chicago (last accessed Apr. 4, 2022).

21.     Badoo also had a tent station at a street festival in Chicago's Wicker Park neighborhood in 2012 where it promoted "Upgrade Your Festival! Download Badoo!"[6]



22.     Defendants' market and promote the Badoo dating app with targeted location-specific content directed to users in large U.S. cities, including Chicago. Bumble Inc.'s Global Head of Editorial Content recently advertised that it was hiring a Chicago-based writer for a local cultural piece for use on the Badoo dating app.[7]

---

[6]    *See*    https://www.facebook.com/badoo/photos/come-meet-new-people-at-our-chillout-tent-at-wicker-park-in-chicago-getting-read/464411183582689 (last accessed Apr. 4, 2022).

[7] O'Connor, C. LinkedIn. Retrieved Apr. 4, 2022, from https://www.linkedin.com/in/clare-oconnor/.



23.     Defendants employ this local content to deliberately market and target Illinois residents, including residents of this District.



24.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred in Illinois. Alternatively, venue is proper under 28 U.S.C. § 1391(b)(3) because this Court has personal jurisdiction over Defendants.

## PARTIES

*Plaintiffs*

25.     Plaintiff Hollis Hill is, and has been at all relevant times, a citizen of Illinois.

26.     Plaintiff Kemelle Howell is, and has been at all relevant times, a citizen of Cook County, Illinois. Howell has been a Badoo user continuously since approximately 2016. She has provided her picture for Badoo's Profile Verification feature multiple times.

*Defendants*

27.     Defendant Bumble Inc., incorporated in Delaware on October 5, 2020, is an American social media company. Bumble Inc. maintained its principal place of business at 1105 West 41st Street, Austin, Texas 78756.

28.     Before completing its initial public offering on February 16, 2021, Bumble Inc. undertook certain reorganization transactions such that Bumble Inc. is now a holding company, and its sole material asset is a controlling equity interest in Buzz Holdings L.P. (Buzz Holdings").[8]

29.     As the general partner of Buzz Holdings, Bumble Inc. now operates and controls all of the business and affairs of Buzz Holdings, has the obligation to absorb losses and receive benefits from Buzz Holdings and, through Buzz Holdings and its subsidiaries, conduct its business.

---

[8] *See* Bumble Inc. Form 10-Q for the fiscal quarter ended 9/30/2021 (the "Sept. 2021 10-Q"), available at https://ir.bumble.com/static-files/e5297078-0e0f-4559-818d-1b4b93513f8e, at 37 (last accessed Apr. 4, 2022).

30. Bumble Inc. "operates as a single operating segment."[9] Its "chief operating decision maker is the CEO, [Ms. Wolfe Herd,] who reviews financial information presented on a consolidated basis, accompanied by disaggregated information about [Bumble Inc.'s] revenue, for the purpose of making operating decisions, assessing financial performance and allocating resources." *Id*.

31. Bumble Inc. "provides online dating and social networking platforms though subscription and credit-based products . . . [and] provides these services through websites and applications that it owns and operates." Sept. 2021 10-Q, at pp. 12, 34. It does this through operating two dating apps, Bumble and Badoo. *Id*. at p. 34.

32. Defendant Buzz Holdings is a Delaware limited partnership that operates the Badoo dating app. Buzz Holdings maintains its principal place of business at 1105 West 41st Street, Austin, Texas 78756.

33. Bumble Inc. directs and controls the operations of Defendant Bumble Trading LLC ("Bumble Trading"), a wholly-owned subsidiary, that is responsible for the marketing and advertising of the Badoo dating app in the United States.

34. Defendant Bumble Trading is a Delaware limited liability company, responsible for the marketing and advertising of the Badoo dating app. Bumble Trading is a controller of personal information collected and processed through the Badoo dating app. Bumble Trading maintains its principal place of business at 1105 West 41st Street, Austin, Texas 78756.

## FACTUAL BACKGROUND

### I. Illinois' Biometric Information Privacy Act

---

[9] *See* Bumble Inc. Form 10-K for the fiscal year ended 12/31/21 (the "2021 10-K"), available at https://ir.bumble.com/static-files/d9c3cdb9-04a8-4f0d-b694-f31741ca7bbd, at 32 (last accessed Apr. 4, 2022).

35. In 2008, Illinois enacted BIPA due to the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. To protect this highly sensitive personal information, BIPA imposes several requirements on companies relating to biometrics.

36. Under BIPA, before obtaining an individual's Biometric Data, a private entity must comply with the statute's notice and consent provisions. Specifically, BIPA makes it unlawful for a private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a consumer's biometric identifiers and/or biometric information, unless it first:

(1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative."

740 ILCS 14/15(b).

37. To facilitate these informed notice and consent provisions, BIPA also requires that any company "in possession of biometric identifiers or information" must publish a written policy "establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

38. To enforce BIPA's requirements, the statute includes a private right of action authorizing "[a]ny person aggrieved by a violation" to sue and recover for each violation liquated

damages of $1,000 for a negligent violation, or $5,000 in the event of an intentional or reckless violation, plus attorneys' fees, costs, and appropriate injunctive relief. 740 ILCS 14/20.

39.     As alleged below, Defendants violated BIPA by collecting, storing, and using individuals' Biometric Data (specifically, facial geometry) without providing notice and obtaining informed written consent. Defendants also violated BIPA by failing to provide a publicly available policy on their schedule and guidelines for the retention and permanent destruction of individuals' Biometric Data.

## II.    The Badoo Dating App

40.     Created in 2006, Badoo is a dating app that was launched by the Russian-British billionaire Andrey Andreev. Before Badoo, Andreev founded several other companies, including SpyLog—a web-tracking business that helped webmasters track visitors to their site and users' habits on the Internet.

41.     In its early days, Badoo operated as a free dating website that combined photo albums with instant messaging. During this time, most dating platforms required paid memberships and had limited photo or messaging support. Defendants later launched and scaled Badoo as the first modern mobile dating app, and the app was then available on both the Apple and Google mobile operating systems—iOS and Android, respectively.

42.     Badoo has grown to become the world's most-downloaded dating app. The Badoo website features a live counter displaying the number of people who have "already joined" and inviting others to "jump in." The number of people who have "already joined" Badoo is over 514 million worldwide, which includes many Illinois residents.

43.     Defendants tout the technological innovations that Badoo has brought to the online dating world over the years. For example, in 2007, Badoo introduced "Encounters," a feature that allowed users to vote yes or no on other users. In 2009, Badoo included features like virtual gifts

11

and the ability to "rise up" in search results and to see "who likes you." In 2010, Badoo leveraged GPS technology with its new feature "People Nearby," which allowed users to see people in their surrounding area.

44.     More recently, in 2016, Defendants launched Badoo's "Profile Verification" feature—the focus of this Amended Complaint. This feature "helps prove to other users that you're a real person" and "that you're over 18 years old."[10] In essence, this feature ensures that a user is in fact the person the user claims to be in the pictures uploaded to the user's profile on the app. Defendants claim to have implemented this feature to "stamp out fake profile registrations."

45.     Profile Verification occurs in several circumstances. Today, users are required to verify their profiles when they first sign up for the app and set up their profile. The app may also ask existing users to verify their profiles because, for example, they have been reported as potentially fake. Users can also choose to verify their profiles.

46.     To verify their profiles, users must take a selfie that matches a random pose displayed by the app.

---

[10] Profile Verification, https://badoo.com/help/?section=265 (last accessed Apr. 4, 2022).



47.     Defendants then employ a process, described in more detail below, to verify that the person in the user's selfie is the same person in the user's profile pictures on the app. Once the user's profile is verified, the user receives a stamp of approval that shows the app has verified the user. If the app cannot verify a user's profile, the app may block the user's profile.

## III.    Defendants' Secretive Use of Facial Recognition Technology

48.     For Badoo's Profile Verification process, Defendants supposedly employ thousands of human moderators across the world to review photos in real time. But the Profile Verification process does not consist solely of manual human review. As Defendants vaguely explain on the Badoo website, this verification feature uses "a combination of automated and human moderation processes." [11] The automated process that Defendants use is called facial recognition technology. Using this technology, Defendants obtain face geometry scans from users by extracting face geometry data on the unique points and contours (i.e., biometric identifiers) of each face and then using that data to create a template of each face.

---

[11] Profile Verification, https://badoo.com/help/?section=265 (last accessed Apr. 4, 2022).

49.     Though not disclosed anywhere,[12] Defendants' use of facial recognition technology to obtain face geometry scans is apparent from the verification feature's ability to quickly distinguish between human and non-human faces. When a user uploads a real selfie to Badoo's Profile Verification feature, the app takes approximately a minute to analyze the photo and respond with an affirmation or rejection of the photo. But when a user uploads a picture of something non-human—like a cat or a glass—the photo verification feature immediately responds with a rejection message. This immediate response shows that the data is initially analyzed by an automated system that scans the photo to recognize where it includes a visible face.

 

50.     Defendants' use of facial recognition technology to obtain face geometry scans here is also apparent because they have done so openly in another context. In 2017, soon after implementing the Profile Verification feature, Badoo launched a celebrity lookalike feature that

---

[12] Although Badoo's privacy policy includes "Biometric information" in a list of data that it collects, the policy states parenthetically that this category is "not relevant here." Badoo Privacy Policy, https://badoo.com/privacy/ (last accessed Apr. 4, 2022).

allowed users to find matches who look like their favorite celebrities or a non-celebrity they fancy. As a PCMag article described this feature, "[Badoo] just launched a new feature dubbed Lookalikes, which uses facial recognition to help you find potential matches that look just like your crush."[13] While this feature did attract some users, it also met criticism from some who were concerned about Defendants' use of facial recognition and it was removed at an unknown time.

51.     This same facial recognition technology is part of Badoo's Profile Verification feature. Although this feature may also include some element of human review, it is powered in part by this facial recognition technology that collects face scans from users.

52.     Yet, despite BIPA's clear edict, Defendants do not inform users in writing that they are collecting or storing their Biometric Data; do not inform users in writing of the specific purpose and length of time for which they are collecting, storing, or using their Biometric Data; and do not obtain a written release from users authorizing the collection of their Biometric Data.

53.     Nor do Defendants provide a publicly available policy establishing a retention schedule and guidelines for permanently destroying this Biometric Data.

**IV.     Plaintiffs' Experience**

54.     Plaintiffs are Badoo users and have, within the applicable statute of limitations, verified their profiles using the app's Profile Verification feature.

55.     As part of the Profile Verification process, Defendants required Plaintiffs to take a selfie, at which point Defendants' facial recognition software captured and collected Plaintiffs' faceprint.

---

[13] Angela Moscaritolo, *Badoo Uses Facial Recognition to Match You with Celeb Lookalikes*, PCMag (July 11, 2017), available at https://www.pcmag.com/news/badoo-uses-facial-recognition-to-match-you-with-celeb-lookalikes (last visited Apr. 4, 2022).

56.     Defendants never informed Plaintiffs that their Biometric Data was being collected or stored.

57.     Defendants never informed Plaintiffs in writing of the specific purpose and length of term for which their Biometric Data was being collected, stored, and used.

58.     Defendants never received a written release from Plaintiffs authorizing the collection of their Biometric Data.

59.     Because Plaintiffs were never informed of the collection of their faceprint, Plaintiffs did not consent to the capture or collection of their faceprint.

60.     Defendants also do not provide a publicly available retention schedule specifying the period of time for which they will retain Plaintiffs' faceprint.

61.     Plaintiffs were injured as a result of Defendants' violations of their statutorily protected right not to have their faceprint collected without consent.

## FRAUDULENT CONCEALMENT AND TOLLING

62.     Any applicable statute of limitations has been tolled by Defendants' knowing and active concealment of their unlawful conduct. Throughout the Class Period, Defendants affirmatively and fraudulently concealed their unlawful conduct.

63.     Plaintiffs and the Class members did not discover, nor could they have discovered through the exercise of reasonable diligence, the existence of the hidden and ambiguous privacy policies and terms of use.

64.     Further, the very nature of Defendants' conduct was secret and self-concealing. Defendants use automated software and other technologies without adequately informing impacted individuals that their Biometric Data was being collected and potentially disseminated.

16

65.     As a result of Defendants' fraudulent concealment, all applicable statutes of limitations affecting the Plaintiffs' and the Class members claims have been tolled.

## CLASS ALLEGATIONS

66.     **Class Definition:** Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23 on behalf of a class of similarly situated individuals, defined as follows (the "Class"):

> All individuals who, while residing in the State of Illinois, had their Biometric Data collected, captured, received, or otherwise obtained and/or stored by Defendants.

> Excluded from the Class are: (i) any judge or magistrate judge presiding over this action and members of their staff, as well as members of their families; (ii) Defendants, Defendants' predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendant has a controlling interest, as well as Defendants' current or former employees, agents, officers, and directors; (iii) persons who properly execute and file a timely request for exclusion from the Class; (iv) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (v) counsel for Defendants; and (vi) the legal representatives, successors, and assigns of any such excluded persons.

67.     **Numerosity:** The number of persons within the Class is substantial, believed to amount to thousands of persons. It is, therefore, impractical to join each member of the Class as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation. Moreover, the Class is ascertainable and identifiable from Defendants' records.

68.     **Typicality:** Plaintiffs' claims are typical of the claims of the Class members because all Plaintiffs had their Biometric Data collected or otherwise obtained as part of Badoo's Profile Verification, and therefore, Plaintiffs' claims arise from the same common course of conduct giving rise to the claims of the members of the Class and the relief sought is common to the Class.

69. **Common Questions Predominate:** There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any Class Member, include, but are not limited to, the following:

(a) whether Defendants collected or otherwise obtained Plaintiffs' and the Class's Biometric Data;

(b) whether Defendant properly informed Plaintiffs and the Class that it collected, used, and stored their Biometric Data;

(c) whether Defendants informed Plaintiffs and the Class of the purpose for which they collected their Biometric Data, or the duration for which they would retain that data;

(d) whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiffs' and the Class's Biometric Data;

(e) whether Defendants developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying Biometric Data when the initial purpose for collecting or obtaining such Biometric Data has been satisfied or within 3 years of their last interaction, whichever occurs first; and

(f) whether Defendant's violations of BIPA were committed intentionally, recklessly, or negligently.

70. **Adequate Representation:** Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiffs are able to fairly and adequately represent and protect the interests of such a Class. Neither Plaintiffs nor their counsel has any interest adverse to, or in conflict with, the interests of the absent members of the Class. Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the Class, and will vigorously pursue those

18

claims. If necessary, Plaintiffs may seek leave of this Court to further amend this Amended Class Action Complaint to include additional Class representatives to represent the Class, additional claims as may be appropriate, or to amend the Class definition to address any steps that Defendants took.

71.     **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each member of the Class. Plaintiffs anticipate no difficulty in the management of this action as a class action. Class-wide relief is essential to compliance with BIPA.

<u>**CAUSES OF ACTION**</u>

**Count I**
**Against All Defendants**
**Violation of 740 ILCS 14/15(b) – Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information**

72.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

73.     BIPA requires companies to obtain informed written consent from individuals before acquiring their Biometric Data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's

biometric identifiers or biometric information unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ." 740 ILCS 14/15(b). Defendants failed to comply with these BIPA mandates.

74.      Defendant Bumble Inc. is a Delaware corporation and is thus a "private entity" under BIPA. *See* 740 ILCS 14/10.

75.      Defendant Buzz Holdings L.P. is a Delaware limited partnership and is thus a "private entity" under BIPA. *See id.*

76.      Defendant Bumble Trading LLC is a Delaware limited liability company and is thus a "private entity" under BIPA. *See id.*

77.      Plaintiffs and the Class are individuals who have had their Biometric Data collected and/or captured by Defendants, as explained in detail above. *See* 740 ILCS 14/10.

78.      Plaintiffs' and the Class's Biometric Data were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See id.*

79.      Defendants never informed Plaintiffs and any member of the Class in writing that their Biometric Data was being collected, captured, stored, and/or used, nor did Defendant inform Plaintiffs and the Class in writing of the specific purpose(s) and length of term for which their Biometric Data were being collected, stored, used and disseminated as required by 740 ILCS 14/15(b)(1)-(2).

80.      Defendants collected, captured, used, and stored Plaintiffs' and the Class's Biometric Data without first obtaining the written release required by 740 ILCS 14/15(b)(3).

81.     By collecting, capturing, storing, and/or using Plaintiffs' and the Class's Biometric Data as described herein, Defendants violated Plaintiffs' and the Class's rights to privacy in their Biometric Data as set forth in BIPA. *See* 740 ILCS 14/1, *et seq*.

82.     On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendants to comply with BIPA's requirements for the collection, capture, storage, and use of Biometric Data as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**Count II**
**Against All Defendants**
**Violation of 740 ILCS 14/15(a) – Failure to Institute, Maintain, and Adhere to Publicly**
**Available Retention Schedule**

83.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

84.     BIPA mandates that companies in possession of Biometric Data establish and maintain a satisfactory biometrics retention and deletion policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of Biometric Data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the Biometric Data. *See* 740 ILCS 14/15(a). Defendants failed to comply with these BIPA mandates.

85.     Defendant Bumble Inc. is a Delaware corporation and is thus a "private entity" under BIPA. *See* 740 ILCS 14/10.

86.     Defendant Buzz Holdings L.P. is a Delaware limited partnership and is thus a "private entity" under BIPA. *See id.*

21

87. Defendant Bumble Trading LLC is a Delaware limited liability company and is thus a "private entity" under BIPA. *See id.*

88. Plaintiffs are individuals who had their Biometric Data captured and/or collected by Defendants, as explained in detail above. *See* 740 ILCS 14/10.

89. Defendants failed to provide a publicly available retention schedule or guidelines for permanently destroying Biometric Data as specified by BIPA. *See* 740 ILCS 14/15(a).

90. Upon information and belief, Defendants lacked retention schedules and guidelines for permanently destroying Plaintiffs' and the Class's Biometric Data and have not and will not destroy Plaintiffs' and the Class's Biometric Data when the initial purpose for collecting or obtaining such Biometric Data has been satisfied or within three years of the individual's last interaction with the company.

91. On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendants to comply with BIPA's requirements for a publicly available retention and deletion policy; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Hollis Hill and Kemelle Howell, on behalf of themselves and the proposed Class, respectfully request that this Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs as representatives of the Class, and appointing their counsel as Class Counsel;

B.   Declaring that Defendants' actions, as set out above, violate BIPA, 740 ILCS 14/1, *et seq.*;

C.   Awarding statutory damages of $5,000.00 for each and every intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages of $1,000.00 for each and every violation pursuant to 740 ILCS 14/20(1) if the Court finds that Defendants' violations were negligent;

D.   Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, among other things, an Order requiring Defendants to collect, store, and use Biometric Data in compliance with BIPA;

E.   Awarding Plaintiffs and the Class their reasonable attorneys' fees and costs and other litigation expenses;

F.   Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

G.   Awarding such other and further relief as equity and justice may require.

## **JURY TRIAL**

Plaintiffs demand a trial by jury for all issues so triable.

Dated: April 6, 2022                              Respectfully submitted,

s/ *Brian M. Hogan*
Brian M. Hogan
**FREED KANNER LONDON
   & MILLEN LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Phone: (224) 632-4500
bhogan@fklmlaw.com

Jonathan M. Jagher
**FREED KANNER LONDON
   & MILLEN LLC**
923 Fayette Street

23

Conshohocken, PA 19428
Phone: (610) 234-6487
jjagher@fklmlaw.com

*Attorneys for Plaintiffs and the Proposed Class*